HENDRY, Judge.
This is an appeal by J. M. Renedo and Nieves Maria Renedo, his wife, and Chatham Investments, Inc., from an amended final judgment in eminent domain proceedings ' instituted by Dade County, a political subdivision of the state of Florida, in which a strip of land five feet in depth and several hundred feet in length was taken for the purpose of widening N. E. Eighty-second Street between North Miami Avenue and Biscayne Boulevard in Dade County, Florida. The defendants, Dr. and Mrs. Renedo, were fee simple owners of three lots, each of which was improved with a two-story, four-unit apartment building; the easternmost and westernmost buildings were set back, prior to the instant taking, twenty feet from the north side of Eighty-second Street; the middle building was set back near the rear of the lot, leaving a large court in the “U” formed by the buildings. This property was designated in the suit as parcel 44-2.
The defendant, Chatham Investments, Inc., was the fee simple owner of five lots, the westernmost three of which were occupied by five two-story apartment buildings. The two easternmost lots are vacant. The county took the strip of land along the south side of N. E. Eighty-second Street and off of the north side of its property. The five buildings contained a total of twenty-four apartment units at the time of the taking. This property was designated in the suit as parcel 48-2.
Appellants raised no question as to the value of the land embraced in the five foot strip taken by the county and thus limited the trial to the one issue of severance damages to the remainder of appellants’ property. The cause was tried with a jury which returned a verdict awarding the defendants, Dr. and Mrs. Renedo, the sum of $6,230 and the defendant, Chatham Invest *699 ments, Inc., the sum of $7,065. The final judgment for such amounts was entered.
The county being dissatisfied with the amounts awarded to the defendants filed its motion for a new trial or for an order amending the judgment by reducing the award to the Renedos as to parcel 44-2 and the award to Chatham Investments, Inc., as to parcel 48-2, to conform to the evidence. Pursuant to such motion the trial court entered its order amending the final judgment by reducing the award to the Renedos as to parcel 44 — 2, from $6,230 to $1,269 and the award to Chatham Investments, Inc., as to parcel 48-2, from $7,065 to $5,047. It is from this order of amendment that defendants take this appeal.
The questions presented to us are: whether there was substantial evidence upon which the jury could have based its verdict; and whether the trial court should have granted a new trial rather than fix the amount of damages by amendment to the judgment.
It is contended by the county that the only estimates as to value and damages were those given by the expert witnesses, Mr. Leonard A. Bisz and Mr. Theodore W. Slack, who were produced by the county. Appellee argues that the highest estimate as to damages on parcel 44 — 2 was $1,269 for land taken with no allowance for severance damages; and the highest estimate on parcel 48-2 was $1,970 for the land, $300 for the land improvements, i. e., grass and shrubbery, and $2,742 as damages for loss of parking spaces or a total of $5,012.
The appellants have raised no question as to the value of the land embraced in the five foot strip taken by the county standing alone. The sole issue was that of severance damages, i. e., the damages occasioned to the remainder of appellants’ property by the loss of the five foot strip. The principal claim for severance damages was based upon the alleged loss of parking spaces. Mr. Slack testified that the number of spaces would be reduced by the taking from eighteen to six, or a loss of twelve spaces, unless other available spaces on the three lots were utilized. If such was done there would be no actual net loss of parking spaces. For that reason he stated no severance damages would be suffered. Both Mr. Slack and Mr. Bisz testified from their studies and investigation of the value of parking space in the area that they were of the opinion that the loss of a needed and irreplaceable space for an automobile was worth $10 per month, and that the total loss of such space would be measured by the extent of $10 a month over the remaining life of the buildings, which was estimated by them to be twenty years. Mr. Slack was asked about the various ways the owners might develop or deal with the property. He testified that additional units could be erected on parcel 44 — 2 which would require additional parking spaces. He also stated that the three buildings might be sold as three different properties and if this were done he would appraise them differently.
Dr. Renedo testified that he was considering selling the property on parcel 44 — 2 in separate lots. If this could not be done, then he intended to add more units.
The testimony of Mr. Slack as to the Chatham property, parcel 48-2, showed that he considered the value of the strip taken and the severance damages to the remainder of the parcel to be $5,012. He placed values of $1,970 for the land taken, of $300 for the improvements and of $2,742 for damages to the remainder through loss of four parking spaces, which he figured at $685.50 per lost parking space. Mr. Slack stated that the three lots occupied by the five buildings, had, adjacent to said buildings and without regard to space on the two adjoining vacant lots, a total of thirty-one spaces prior to the taking and only fourteen such spaces after the taking. However, if the two adjoining vacant lots were used there would be a loss of only four parking spaces. The value of the two *700 vacant lots was estimated to be between Forty and Fifty Thousand Dollars, and they might be sold separately if the owners desired to sell them. In the event they were sold it would mean that there would be a loss of seventeen parking spaces. The witness when examined with reference to the possibility of adding to or .remodeling the buildings or using the two vacant lots said that there were possibly fifty different solutions to what might be done with the vacant lots.
Mr. Bisz testified that he and Mr. Slack collaborated in the appraisal of these parcels of property. He was of the opinion that the total award to the owners of parcel 48-2 should be $4,997, only $2,377 of this amount being for loss of parking space.
The manager of the apartments and the principal stockholder of the corporation testified as to the type of operation at the time of the taking and as to the various plans being considered for the future which included adding more apartments by cutting up the larger apartments, building additional buildings and selling the vacant lots.
Testimony given by the expert witnesses was rather extensive in relation to these parcels as well as other parcels in the immediate area but we cannot see where any worth-while purpose would be served by further detailed discussion of the evidence.
Appellants contend that the jury awards are fully supported by the testimony of the two expert witnesses, and that it was error for the trial court to enter its order reducing the jury awards.
We think the appellants’ position is sound and amply supported by the ¡record. The formula, i. e., $10 per month for the life of the building for each needed and irreplaceable parking space lost was set by the experts. It was within the province of the jury to apply this formula in the light of the evidence coming from the witnesses. Our study of the complete record convinces us that the jury was not limited in its findings to the definite dollar damages, set by the expert witnesses, as many of the factors bearing on the severance damages were within the province of the jury to evaluate.
The jury, in considering and weighing the testimony of real estate experts, may consider experience and familiarity of such witnesses with locations affecting the real estate market, and they may give to the testimony of such witriesss such weight as they find to be proper, in the light of such experience and familiarity and its credibility generally. They are not required to disregard such information as they may have as a matter of common knowledge, nor should they accept as true testimony that is against .reason and human experience. They may use such knowledge as they may have gained by their view of the property and its surroundings in assisting them in interpreting and weighing the testimony of the witnesss when conflicting as to value and damages.[1] See Doty v. City of Jacksonville, 106 Fla. 1, 142 So. 599; 12 Fla.Jur., Eminent Domain, § 143.
We hold that it was error for the trial court to enter an order amending the jury’s verdict in this case. We must, therefore, reverse the trial court’s order amending the judgment as to parcels 44 — 2 and 48-2 and this cause is remanded with directions to reinstate the judgment based upon the awards of the jury.
Reversed and remanded with directions.
BARKDULL, J., dissents.

. The record shows that the jury visited the properties in question for the purpose of having the benefit of independent observation.